UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBORAH ELE, | ) | 1:04cv6084 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Deborah Ele ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 4, 2005, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her application on November 8, 2001, alleging disability since October 3, 2001, due to "severe neck and back degenerative disc disease, arthritis, thyroid disease, spurring associated with neck disease, bronchitis, asthma." AR 71-75, 84-93, 227-230. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 29-32, 35-38, 39. On April 28, 2003, ALJ James Baker held a hearing. AR 245-266. On August 27, 2003, ALJ Baker found that Plaintiff was not disabled. AR 14-23. On June 18, 2004, the Appeals Council denied review. AR 5-7.

Hearing Testimony

ALJ Baker held a hearing on April 28, 2003, in Stockton, California. Plaintiff appeared with her attorney, Jeffrey Milam. Vocational expert ("VE") David Dettmer also appeared and testified. AR 245.

Plaintiff testified that she was born in 1959 and has a high school degree. AR 248. Plaintiff stopped working in October 2001 because she was taking so much time off due to her neck and back pain that she just had to quit. AR 250-251. She explained that the pain came on gradually and started getting worse. AR 251-252.

Plaintiff described pain in her lower back and left side of her neck. She has had spasms in her right calf for the past four or five months. AR 252. She also has a tingling sensation in her right leg, but no radiating pain. AR 252-253. She has used a cane for the past two months because Dr. Gesson suggested it might help. AR 253. The cane helps, but she tries not to use it all the time. AR 253.

Her neck and back affect her ability to stand at times. AR 253. She can stand for about an hour before it becomes uncomfortable and she has to sit down and elevate her legs, etc. AR 254. Her medications help her with sleeping and pain. AR 254.

She thought she could walk, without her cane, about a block. She could go a little further with her cane. The pressure in the lower part of her back causes problems sitting. AR 254. She

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

can sit for about 45 minutes before she has to get up and move around. AR 255. She lays down a few times a day, for a few hours a time. AR 255. She is in bed all day for two days a week. AR 256.

She lives with her son, daughter-in-law, and her two daughters. They do most of the work around the house while Plaintiff "instructs a lot." AR 258. She folds her laundry on her bed and watches television for a couple of hours during the day. AR 258-259. She goes to church three times a week, tries to walk around her house, sits on her front porch and reads. Her son does a majority of the grocery shopping. AR 259. She has a driver's license but does very little driving because sitting and turning her neck are uncomfortable. AR 260.

When questioned by her attorney, Plaintiff explained that she has tingling and numbness in her hand but has no problems grasping, etc. AR 260. She has no problem concentrating. AR 261.

The VE testified that Plaintiff's past relevant work ranged from skilled to unskilled, and from sedentary to heavy. AR

For the first hypothetical, the ALJ asked the VE to assume that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. She could stand and walk about six hours and sit for about six hours in an eight hour workday. She had the "usual occasional postural limitations" and could occasionally reach overhead. She had to avoid moderate exposure to fumes, odors, dust, gases, poor ventilation, etc. The VE testified Plaintiff would be able to perform sedentary and light work, including Plaintiff's prior job of cashier. AR 262.

For the second hypothetical, the ALJ asked the VE to assume that Plaintiff could lift 20 pounds occasionally, 10 frequently, could occasionally push/pull with the upper extremities, and could occasionally climb ramps and stairs but not ladders, ropes or scaffolds. She could occasionally kneel, crouch and crawl. She could not reach up or overhead with her upper extremities. She had to avoid concentrated exposure to cold, heat, extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, gases, poor ventilation, etc.  She had to avoid moderate exposure to vibration and had to avoid all exposure to hazards such as machinery, heights, etc.

AR 262-263.  Based on this hypothetical, Plaintiff would still be able to perform her past work as cashier, light counter work, and receiving supervisor.  AR 263.

For the third hypothetical, the ALJ asked the VE to assume that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and stand and/or walk about six hours.  She has no sitting restrictions but is limited in pushing and pulling with both upper and lower extremities.  She could occasionally climb, kneel, crouch and crawl.  She could not perform frequent overhead work.  AR 264.  Plaintiff could perform her past relevant work.  AR 264.

If the person in the third hypothetical could stand for less than two hours with appropriate breaks, it would impact the full range of light work.  AR 265.

Medical Evidence

Plaintiff underwent pulmonary function testing on November 16, 2000.  The test was normal.  AR 136-137.

On November 26, 2000, Plaintiff was treated at Memorial Hospital for a continuing cough with chest pain.  Chest x-rays were negative.  AR 170.  She was given a breathing treatment and discharged.  AR 163-170.

In December 2000, Plaintiff was examined by Robert Tanaka, M.D., for persistent bronchitis.  He diagnosed chronic bronchitis and "discouraged" smoking.  AR 129-131.  Sinus x-rays were negative.  AR 128, 130.

In July 2001, Plaintiff began complaining of neck and middle back pain.  AR 123-127.

Cervical spine x-rays taken on July 23, 2001, showed severe degenerative disc disease at C6-7 and moderately severe degenerative joint disease at C5-6.  AR 126.  Lumbar spine x-rays revealed mild to moderate narrowing at L5-S1.  AR 127.

On August 14, 2001, Plaintiff was examined by Mark Madsen, M.D., and complained of headaches associated with her neck pain and mid back pain.  At the time of the examination, she was performing all of her duties as receiving clerk except for heavy lifting.  Upon examination, Plaintiff's cervical range of motion was decreased, particularly for right rotation.  Dr. Madsen also reviewed Plaintiff's July 2001 x-rays and diagnosed cervical disc degeneration C5-6 and C6-7 and myofacial pain syndrome.  He recommended conservative treatment, including a

1  cervical traction unit and physical therapy.  He instructed her to stop smoking and explained that
2  continuing to smoke would "undoubtedly progress her degenerative disc disease and ultimately
3  her pain and disability."  AR 124-125.
4        On November 14, 2001, Plaintiff was seen at Memorial Hospital for neck spasms that
5  were unrelieved by a heating pad and medication.  She was diagnosed with acute upper back
6  pain and discharged with medication.  AR 156.
7        On December 18, 2001, a State Agency physician completed a Physical Residual
8  Functional Capacity Assessment and opined that Plaintiff could occasionally lift 20 pounds, 10
9  pounds frequently, stand and/or walk about six hours and sit for about six hours in an eight hour
10 period.  She was unlimited in pushing/pulling and could occasionally climb, balance, stoop,
11 kneel, crouch, and crawl.  She could occasionally reach overhead and had to avoid even
12 moderate exposure to fumes, odors, dusts, gasses, poor ventilation, etc.  AR 138-145.
13       On January 2, 2002, Plaintiff was seen at Memorial Hospital for shoulder and neck
14 pain/spasms.  She was diagnosed with chronic pain in her neck and upper back and cervical
15 degenerative disc disease by history.  She was discharged and given Vicodin and Valium.  AR
16 147-154.
17       On February 26, 2002, treating physician Pamela Cushenberry, M.D., completed a form
18 and indicated that Plaintiff was disabled because of her cervical degenerative joint disease and
19 resulting back and neck pain.  She explained that the pain makes it difficult for her to perform
20 her usual duties and estimated that Plaintiff could return to work in March 2002.  Dr.
21 Cushenberry had not seen Plaintiff since August 14, 2001, and indicated that she had an
22 appointment with the pain specialist on March 21, 2002.  AR 121.
23       Plaintiff saw Bruce H. Gesson, M.D. on March 21, 2002.  She received trigger point
24 injections in her cervical spine, shoulder area, greater occipital area and left temporal parietal
25 areas.  AR 174.
26       On April 9, 2002, Plaintiff returned to Dr. Gesson and received trigger point injections in
27 her cervical spine and lumbar spine.  AR 172.  Dr. Gesson indicated that Plaintiff would be
28 scheduled for a lumbar and cervical epidural steroid block.  AR 172.

1   On April 17, 2002, a State Agency physician completed a Physical Residual Functional
2   Capacity Assessment and opined that Plaintiff could occasionally lift 20 pounds, 10 pounds
3   frequently, stand and/or walk about six hours and sit for about six hours in an eight hour period.
4   She could occasionally push/pull with her upper extremities and could occasionally climb ramps
5   and stairs, kneel, crouch, and crawl. She could never climb ladders, ropes or scaffolds and could
6   frequently balance and stoop. She could not reach overhead with her upper extremities. She had
7   to avoid concentrated exposure to extreme cold and heat, wetness, humidity and noise. She had
8   to avoid even moderate exposure to vibration and had to avoid concentrated exposure to fumes,
9   odors, dusts, gases, poor ventilation, etc. She had to avoid all exposure to hazards such as
10  machinery and heights. AR 176-182.

11  On June 4, 2002, Dr. Gesson completed a report and indicated that Plaintiff had severe
12  cervical and lumbar radiculopathey and degenerative joint disease in her cervical and lumbar
13  spine. He diagnosed her with cervical and lumbar radiculopathy and indicated that she had a
14  poor response to the trigger point injections. He described her prognosis as poor. AR 203. In a
15  medical assessment form, Dr. Gesson opined that Plaintiff could occasionally lift and carry up to
16  10 pounds, could sit for two hours, stand for one hour and walk for zero hours during an eight
17  hour day. She could occasionally grasp and manipulate with her hands. She could never climb,
18  kneel or crawl and could occasionally balance, stoop and crouch. She could occasionally reach,
19  handle, feel and push/pull. She had to avoid all exposure to heights, moving machinery,
20  chemicals, noise, humidity, dust, temperature extremes, fumes and vibrations. AR 204-208.

21  On June 25, 2002, Plaintiff saw Dr. Gesson and received trigger point injections in her
22  cervical spine, left trapezius, left deltoid areas and great occipital region bilaterally. Plaintiff
23  started noticing "quite a bit of relief" after the injections. AR 213.

24  Plaintiff returned to Dr. Gesson on August 20, 2002. She received trigger point
25  injections in her cervical spine, left trapezius and left deltoid. He indicated that she would
26  "definitely not be able to work again." AR 210.

27  On August 20, 2002, Dr. Gesson completed a questionnaire and indicated that Plaintiff
28  was precluded from performing full time work at any exertional level due to her severe cervical

6

radiculopathy.  He opined that Plaintiff could sit for 10 minutes at a time and stand/walk for 20 minutes at a time.  Over an eight hour period, he indicated that Plaintiff could sit for 10-20 minutes at a time and stand/walk for 10-20 minutes.  She has difficulty looking from side to side, up and down, and lifting over 15 pounds.  AR 212.

On November 6, 2002, Plaintiff underwent an MRI of the cervical spine.  The MRI revealed diffuse posterior disc protrusion at C6-7 with mild spinal stenosis, and central left lateral disc protrusion at C5-6 with left lateral recess encroachment.  AR 215.

On November 27, 2002, Plaintiff underwent a cervical epidural block.  AR 225-226.

Plaintiff underwent a comprehensive orthopedic evaluation by Wesley Foreman, M.D., on January 11, 2003.  Plaintiff complained of neck and back pain and indicated that she was independent with activities of daily living.  She reported that on a typical day, she rises, gets dressed, sits in her rocking chair, has breakfast, and reads.  She also watches television, goes to church, and watches her grandchildren play.  Plaintiff's gait was normal and she did not use an assistive device.  Range of motion of the cervical and lumbar spinal region was within normal limits, but Plaintiff had significant cervical and dorsolumbar paraspinal tenderness.  Dr. Foreman diagnosed cervical neck pain, possible lumbar facette arthropathy, cervical degenerative disc disease, lumbar degenerative disc disease, and cervical spine stenosis.  Based on Plaintiff's history, her examination and a review of her medical records, Dr. Foreman opined that she could stand and walk for six hours and sit without restriction.  She did not need an assistive device.  She could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She could occasionally bend and stoop repeatedly and could occasionally reach overhead on a frequent basis.  If she had to work overhead for a prolonged period of time, her symptoms would be exaggerated.  There were no environmental restrictions.  AR 216-220.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of degenerative cervical disc disease and degenerative lumbar disc disease.  The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work.  In so finding, the

ALJ determined that Plaintiff's allegations were not fully credible.  Based on her RFC, Plaintiff was able to return to her past relevant work as a receiving supervisor.  AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative cervical disc disease and degenerative lumbar disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) but retains the RFC to perform her past relevant work as a receiving supervisor. AR 22.

Plaintiff argues that (1) the ALJ failed to review all of Plaintiff's impairments at step two of the sequential evaluation process; (2) the ALJ improperly discredited her treating physician's opinion; (3) the ALJ improperly evaluated her testimony; and (4) the VE testimony was insufficient.

## DISCUSSION

A.   Plaintiff's Impairments

Plaintiff first argues that the ALJ failed to review all of her impairments at step two of the sequential evaluation process. She argues that the evidence documents cervical disc protrusions, tissue/nerve impingement and chronic bronchitis. In a related argument, Plaintiff contends that the ALJ's RFC finding was not supported by the evidence.

At the second step of the sequential evaluation of disability, the ALJ determines whether a claimant has a severe impairment or combination of impairments. A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b). An impairment or combination of impairments is found "not severe" if the medical

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).  SSR 85-28.

Here, the ALJ determined that Plaintiff had the severe impairments of cervical and lumbar degenerative disc disease.  AR 19.  Insofar as Plaintiff contends that the "diagnoses" of cervical disc protrusions and tissue/nerve impingement should have been found severe, she fails to recognize the difference between a diagnosis and resulting physical or mental limitations.  In support of her argument, Plaintiff cites the November 6, 2002, MRI of her cervical spine.  AR 215.  Although the MRI evidenced cervical disc protrusions, these appear to be part of the diagnosis of cervical disc disease.  In other words, any limitations resulting from the cervical disc protrusions would necessarily be included in the limitations resulting from her cervical disc disease, which the ALJ found severe.  The ALJ reviewed the evidence demonstrating that Plaintiff had decreased range of motion in her cervical spine, especially on right rotation.  AR 19.  He also noted that x-rays revealed severe degenerative disc disease at C6-7, moderate disc disease at C5-6, and mild to moderate narrowing at L5-S1.  AR 19.

Similarly, other than a handwritten reference to "impingement" on the MRI report, there is no evidence that Plaintiff was diagnosed with nerve/tissue impingement.  AR 215.  Neither her treating physicians nor the examining physician made such a diagnosis.

The ALJ also explained why he determined that Plaintiff's bronchitis was not a severe impairment.  He explained that although the record showed that Plaintiff was treated on occasion for sinusitis and bronchitis, there is no evidence that she suffers from any continued breathing problems or that her ability to function physically is limited due to breathing problems.  AR 20.  Pulmonary function testing was normal and there is no evidence that Plaintiff was treated for, or complained of, breathing problems since November 2000.[4]  AR 136.  As the ALJ correctly

---

[4] Although Plaintiff was examined in December 2000 for persistent bronchitis, she reported that she was able to do most of her daily activities without significant difficulty.  Her chest was clear with no rales or wheezing.  Dr. Tanaka diagnosed chronic bronchitis, no history of sinusitis, and suggested antibiotic treatment if warranted.  AR

10

determined that Plaintiff's bronchitis was not a severe impairment, he was not required to accept the related non-exertional environmental limitations.

Despite Plaintiff's argument, the ALJ's RFC was supported by substantial evidence. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

The ALJ found that Plaintiff retained the RFC for light work. AR 19. As noted above, the only clinical abnormality noted in the record was a decreased cervical range of motion, particularly on right rotation. AR 124-125. In December 2001, a State Agency physician opined that Plaintiff could perform light work with occasional postural activities and overhead reaching. AR 138-145. A November 2002 MRI of the cervical spine revealed mild stenosis and mild disc protrusion. AR 214-215. In January 2003, Dr. Foreman examined Plaintiff and found no significant abnormalities. AR 216-220. All ranges of motion, including in her cervical spine, were within normal limits and she had full strength in all extremities. AR 218-219. Dr. Foreman concluded that she could stand and walk for six hours and sit without restriction. She did not need an assistive device. She could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could occasionally bend and stoop repeatedly and could occasionally reach overhead on a frequent basis. He did not impose any environmental restrictions. AR 216-220.

B.   Treating Physicians' Opinions

Next, Plaintiff argues that the ALJ failed to properly consider the opinions of Dr. Gesson and Dr. Cushenberry, who, according to Plaintiff, report that Plaintiff's limitations would preclude full-time work.

---

129-131. There is no evidence of breathing problems or treatment after this date, nor is there evidence that Plaintiff received antibiotic treatment.

11

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).

The ALJ explained that the medical source statements issued by Plaintiff's treating physicians were not fully supported by the record. AR 20. He noted that the November 2002, cervical spine MRI was interpreted as showing only mild stenosis and mild disc protrusion, and that these findings were not consistent with the treating physicians' opinions. AR 20. X-rays of the lumbar spine showed only mild to moderate narrowing at L5-S1. AR 20. The ALJ further noted that treatment notes have not shown any significant abnormalities aside from her exhibiting some limitation of range of motion in her cervical spine. AR 20. A lack of supporting clinical findings is also a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ concluded, "[i]n issuing their medical source statements, the claimant's treating physicians have relied for the most part on the claimant's subjective complaints rather than objective findings." AR 20. An ALJ may also reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989).

In other portions of the decision, the ALJ explained that although Dr. Cushenberry opined that Plaintiff was disabled, she had last seen Plaintiff six months prior to the opinion and was not scheduled to see her again until the next month. Therefore, although she continued to

12

receive treatment, the ALJ concluded that this treatment was not sought on a regular basis. AR 20. Additionally, the ALJ noted that Dr. Gesson indicated that Plaintiff obtained quite a bit of relief from the injections, even though just a few weeks earlier he reported that Plaintiff's response to treatment and her prognosis were poor. AR 20, 203, 213.

The ALJ therefore set forth specific, legitimate reasons for rejecting the unsupported opinions of Plaintiff's treating physician. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision if it is supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Insofar as Plaintiff contends that the treating physicians "entirely endorsed" her excess pain, her claim is unsupported and without merit. Plaintiff was not diagnosed as having excess pain. As Respondent notes, Plaintiff points to Dr. Gesson's report which is based mainly on her subjective complaints. AR 172, 210, 213. Plaintiff also fails to acknowledge that Dr. Gesson, in a June 2002, treatment note, reported that Plaintiff "started noticing quite a bit of relief after the injections." AR 213.

C.    Plaintiff's Testimony

Plaintiff contends that the ALJ failed to address her credibility pursuant to SSR 96-7p. She contends that he failed to review the "documentary evidence" and failed to respond to Plaintiff's allegations of consistent, severe pain, with radiculopathy into the legs and hands, pursuant to the criteria set forth in SSR 96-7p.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility

determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

First, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001).

Second, the ALJ made findings sufficient to allow the Court to determine that he did not arbitrarily reject Plaintiff's testimony. The ALJ began his credibility analysis by recognizing that it was "not unreasonable for the claimant to have complaints of neck pain where the evidence shows her having disc protrusion with mild spinal stenosis at C6-7 and disc protrusion with left lateral recess encroachment at C5-6." AR 21. However, the ALJ explained that her complaints were not fully supported where the evidence did not show that she had any significant abnormalities except for subjective complaints of pain with range of motion testing. AR 21. Plaintiff's claims were also discredited by virtue of the two State Agency physicians and the consultive examiner, who opined that she was capable of performing the exertional and non-exertional demands of light work. AR 21. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

As for Plaintiff's back pain, her subjective complaints were not fully supported where the objective evidence showed only mild to moderate narrowing at LS-S1. Nor did the record demonstrate any abnormalities or limitations in functioning in her lumbar spine, aside from her subjective complaints of pain with extension testing. AR 21. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may consider inconsistencies between claimant's allegations and the evidence).

The ALJ next explained that Plaintiff's onset date of October 3, 2001, had nothing to do with the treatment record. The ALJ regarded this as an inconsistency that affected her credibility. AR 21. Indeed, as Respondent points out, the ALJ noted that Plaintiff filed a prior application in 1997, yet she was clearly able to work for several more years. AR17. *Id.; Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

Insofar as Plaintiff testified that she was bedridden for one to two days per week, the ALJ explained that he would expect a "much more aggressive treatment record and clear evidence of atrophy, etc. . . if this were the case." AR 21. He viewed this as an inconsistency that affected her credibility. *Johnson,* 60 F.3d at 1434.

The ALJ further explained that he inferred that medications were prescribed in response to Plaintiff's subjective complaints of pain, given the minimal objective findings. AR 21. *Sample*, 694 F.2d at 642.

Finally, the ALJ noted Plaintiff's lack of regular treatment, referring to her sporadic treatment with Dr. Cushenberry. AR 21. *See eg., Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (sporadic treatment for back pain inconsistent with disability complaints).

D.   VE Testimony

Finally, in a very brief argument, Plaintiff contends that the ALJ "improperly led the VE into the answers he wanted." Plaintiff argues that this led to inherent errors in the VE's answers and rendered them incredible.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the ALJ propounded three hypotheticals to the VE, and even under the most restrictive hypothetical, the VE testified that Plaintiff could perform all of her past light and sedentary positions. AR 263. Only when Plaintiff's attorney added the limitation of standing for only one hour, a limitation not supported by the record, did the VE indicate that the full range of light work would be impacted. AR 265.

Plaintiff's claims that the ALJ "improperly led" the VE or left the VE confused, her argument fails. First, as Respondent points out, Plaintiff was represented at the hearing by the same law firm representing her before this Court. Her attorney at the hearing, Jeffrey Milam, did not object to any questioning nor did he further explore any of the VE's previous answers during his opportunity to question the VE. AR 264-265.

Moreover, there is no indication that the VE was confused by any of the ALJ's questioning. In fact, after setting forth the first hypothetical, the ALJ asked, "Questions about that?" AR 262. The VE responded, "No." AR 262. After the second hypothetical, during which the ALJ corrected himself numerous times, the ALJ asked, "Questions about that hypothetical or assessment?" AR 263. The VE responded, "No I don't think so," and responded that in general, this individual could perform Plaintiff's past light and sedentary positions. AR 263. After the third hypothetical, the ALJ stated, "That sounds pretty much like what we've been talking about doesn't it?" The VE responded, "Close enough Judge. I would agree." AR 264.

Insofar as Plaintiff contends that the VE did not understand her attorney's hypothetical question about someone who could only stand for up to one hour before needing a break, the Court submits that, assuming a misunderstanding, it was the attorney's responsibility to ensure

that the VE understood the intended meaning of the hypothetical.  In any event, the VE responded that this would impact the full range of light work, likely the response the attorney was looking for.  AR 265.  That the ALJ did not find this limitation supported does not change the sufficiency of the hypothetical questions.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff Deborah Ele.

IT IS SO ORDERED.

Dated:   September 19, 2005                    /s/ Dennis L. Beck
3b142a                                         UNITED STATES MAGISTRATE JUDGE